IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 3, 2013

## MARK BURELL PARRISH v. TAMMY JO SCOTT PARRISH

**Direct Appeal from the Chancery Court for Henderson County**
**No. 24468     James F. Butler, Judge**

---

**No. W2013-00316-COA-R3-CV - Filed June 21, 2013**

---

This is a divorce case in which the award of alimony *in futuro* is questioned. Appellant Husband and Appellee Wife were married for approximately thirty years. The trial court granted Husband a divorce, divided certain marital property and debt, and awarded Appellee Wife alimony *in futuro* in the amount of $850 per month until death or remarriage. Appellant Husband appeals only the award of alimony. From the totality of the circumstances, and specifically based upon Wife's health issues, her level of education, her employment history, and past earnings, it does not appear that rehabilitation will be possible. Accordingly, we conclude that the trial court did not abuse its discretion in the type and amount of alimony awarded. Wife's request for attorney's fees on appeal is denied. Affirmed and remanded.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Chancery Court Affirmed**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

William E. Tallent, Jackson, Tennessee, for the appellant, Mark Burell Parrish.

Lloyd R. Tatum, Henderson, Tennessee, for the appellee, Tammy Jo Scott Parrish.

### OPINION

Appellant Mark Burrell Parrish ("Husband") and Appellee Tammy Jo Scott Parrish ("Wife") were married on December 27, 1982. Two children, now past the age of majority, were born to the marriage. The parties separated in March 2010. On June 28, 2010, Husband filed a complaint for divorce in the Chancery Court of Henderson County, alleging inappropriate marital conduct and irreconcilable differences as grounds. Wife did not file an answer to the complaint and, on August 26, 2010, Husband moved the court for entry of a default judgment against her. The trial court granted the default judgment and the parties

were divorced by order entered on September 30, 2010.

On October 27, 2010, Wife filed a Tennessee Rule of Civil Procedure 59 motion to set aside the September 30, 2010 final decree of divorce. Concurrent with this motion, Wife filed an answer to the complaint for divorce and a counterclaim for divorce, asking the court, *inter alia*, to award her alimony. Wife's Rule 59 motion was granted and the September 30, 2010 final decree of divorce was set aside by order entered on April 14, 2011. Thereafter, the parties engaged in discovery and also submitted to mediation, where they were able to agree on the division of certain marital property and debt. The parties were unable to agree on the division of Husband's retirement account, the division of some marital debts, and the need for alimony. However, the case was not pursued by either party until the trial court entered an order, on August 1, 2012, advising that it would dismiss the case for failure to prosecute unless the parties could show cause why it should not be dismissed. In response, Wife filed a request, on August 14, 2012, that the case not be dismissed. On November 15, 2012, Wife filed a "Final Divorce Disposition Checklist," asking, *inter alia*, for an award of $1,000 per month in alimony *in futuro*.[1]

The trial court heard all pending matters on November 15, 2012. By order of December 13, 2012, the trial court divorced the parties. Concerning the award of alimony, the court's order states, in relevant part, that:

> [T]he parties were married for 29 years. . . . [Husband] has a net income of $5,062.00 [per month] and [Wife] has $1,430.00 in living expenses and draws $200 per month in food stamps and has many physical and educational limitations preventing her from being gainfully employed and is in need of alimony *in futuro* . . . .
>
> IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that:
>
> &ast;     &ast;     &ast;
>
> 4. [Husband] shall pay alimony *in futuro* to [Wife] in the amount of $850 per month beginning December 1, 2012 and continue until her death or remarriage. [Husband] shall also maintain a

---

[1] The "Final Divorce Disposition Checklist" appears to be one means by which a party may remind the trial court of the status of the divorce case and may reiterate his or her request for relief.

-2-

life insurance policy insuring his life with [Wife] as the sole irrevocable beneficiary in the amount of $50,000 to remain in full force and effect while the alimony awarded in this cause remains due. In the event [Husband] fails to maintain said insurance and absent further order of the court, then any succeeding alimony due following [Husband's] death will be charged against [Husband's] estate.

As set out above, the trial court's order is sparse on findings concerning the basis for the award of alimony in this case. The order does not elaborate on what limitations specifically comprise the "many physical and educational limitations" that result in Wife's inability to be rehabilitated. It is well settled that a court speaks through its orders. *Palmer v. Palmer*, 562 S.W.2d 833, 837 (Tenn. Ct. App. 1977). In *Cunningham v. Cunningham*, No. W2006-02685-COA-R3-CV, 2008 WL 2521425 (Tenn. Ct. App. June 25, 2008), this Court explained:

> A judgment must be reduced to writing in order to be valid. It is inchoate, and has no force whatever, until it has been reduced to writing and entered on the minutes of the court, and is completely within the power of the judge or Chancellor. A judge may modify, reverse, or make any other change in his judgment that he may deem proper, until it is entered on the minutes, and he may then change, modify, vacate or amend it during that term, unless the term continues longer than thirty days after the entry of the judgment, and then until the end of the thirty days.

*Cunningham*, 2008 WL 2521425, at *5 (citing *Broadway Motor Co., Inc. v. Fire Ins. Co.*, 12 Tenn. App. 278, 280 (1930)). Consequently, we usually "do not review the court's oral statements, unless incorporated in a decree, but review the court's order and judgments for that is how a court speaks." *Id*. Moreover, it is well settled that, in bench trials, courts must make findings of fact and conclusions of law to support their rulings. Rule 52.01 of the Tennessee Rules of Civil Procedure provides, in pertinent part:

> In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court. If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein.

*Id*. Prior to July 1, 2009, trial courts were only required to make specific findings of fact and conclusions of law "upon request made by any party prior to the entry of judgment." *See Poole v. Union Planters Bank N.A.*, No. W2009-01507-COA-R3-CV, 337 S.W.3d 771, 791 (Tenn. Ct. App. 2010) (noting the amendment). However, the current version of Rule 52.01 requires the court to make these findings regardless of a request by either party. *Id.*

This Court has previously held that the General Assembly's decision to require findings of fact and conclusions of law is "not a mere technicality." *In re K.H.*, No. W2008-01144-COA-R3-PT, 2009 WL 1362314, at *8 (Tenn. Ct. App. May 15, 2009). Instead, the requirement serves the important purpose of "facilitat[ing] appellate review and promot[ing] the just and speedy resolution of appeals." *Id.*; *White v. Moody*, 171 S.W.3d 187, 191 (Tenn. Ct. App. 2004); *Bruce v. Bruce*, 801 S.W.2d 102, 104 (Tenn. Ct .App. 1990). "Without such findings and conclusions, this court is left to wonder on what basis the court reached its ultimate decision." *In re K.H.*, 2009 WL 1362314, at *8 (quoting *In re M.E.W.*, No. M2003-01739-COA-R3-PT, 2004 WL 865840, at *19 (Tenn. Ct. App. April 21, 2004)).

Generally, the appropriate remedy when a trial court fails to make appropriate findings of fact and conclusions of law pursuant to Rule 52.01 is to "vacate the trial court's judgment and remand the cause to the trial court for written findings of fact and conclusions of law." *Lake v. Haynes*, No. W2010-00294-COA-R3-CV, 2011 WL 2361563, at *1 (Tenn. Ct. App. June 9, 2011). However, this Court has previously held that when faced with a trial court's failure to make specific findings, the appellate courts may "soldier on" when the case involves only a clear legal issue, *Burse v. Hicks*, No. W2007-02848-COA-R3-CV, 2008 WL 4414718, at *2 (Tenn. Ct. App. Sept. 30, 2008), or when the court's decision is "readily ascertainable." *Burgess v. Kone, Inc*., No. M2007-0259-COA-R3-CV, 2008 WL 2796409, at *2 (Tenn. Ct. App. July 18, 2008). Although the trial court's statements from the bench were not specifically incorporated, by reference, into its order, the statements are included in the transcript of the evidence adduced at the November 15, 2012 hearing. While we note that the proper practice is to set forth findings of fact and conclusions of law in the written order, in this case, the trial court's statements from the bench do provide guidance as to its thought process. Accordingly, this Court concludes that, based upon the clear legal issue presented, and the guidance provided by the trial court's oral statements, we are able to ascertain the trial court's reasoning so as to conduct a valid appellate review in this case. In relevant part, the court stated from the bench that:

> The Court has determined this is a case for alimony *in futuro*. The parties have been married 29, almost 30 years. The wife is relatively young, and the husband is, too, 49 on the husband, 47 on the wife. They've been married about 30 years. The husband's earning capacity is much better than the wife's.

The husband's health is much better than wife's. The wife has a number of physical ailments that impede her earning capacity. . . . [H]er tenth grade education impedes her earning capacity and her ability to go back and try to be rehabilitated. The husband is a skilled laborer and over the years has been employed and had—18 years with this company, had on-the-job training and has the ability to make a reasonable wage upon which the parties both survived until the separation came along.

The Court was not privy to all the factors that make up the finding of fault. The parties stipulated to divorce, and I didn't hear anything else about it, so I'm not going to consider that [factor].

The wife's mental condition is—she described anxiety, a previous diagnosis of schizophrenia and that is cleared up. She takes medication. The division of the property between the parties, can't really tell because I don't have any values to go by. I don't know what the value of the real estate is and what the debt is other than the 119,000 [mortgage] debt. But in any event, all the wife seems to be receiving is half of his pension plan and she can live on that [according to the record, half of Husband's pension is approximately $110,000].

I think the parties have separate assets which is a factor to consider, and the tax consequences are that the husband will be able to deduct whatever he pays to wife as a tax deduction on his federal income tax return. So she would have to—the wife would have to, in return, report that income as income on her federal income tax returns each year.

Considering the—not running the numbers on these, the court felt that there was—a little shy on information as to the wife's needs. I did have good information on the husband's ability to pay, and the court took license to add a couple of things to the wife's needs because obviously she does need it, and it's clear to the court that she does. But even adding those things, she did testify to some financial needs, and during the proof as a whole, the court finds that the wife's needs are about $1,430 a month, including her food. She has 200 in food stamps, and so I deducted that which reduces her need down to about 1,230.

The husband has a net income of—and I used his net income by taking his gross, deducting everything on his check

that came out, including the medicals, and added back the $35 a week gas money. His net income is $5,062. I rounded it off to $5,000 because there's no tax on the gas. The husband's reasonable expenses, in running his number[s], are 4,073. Therefore, he has available about $990 more or less. . . . Then based on the foregoing factors, the court sets the alimony *in futuro* at 850 per month. . . .

Husband appeals the December 13, 2012 order. He raises two issues for review as stated in his brief:

> 1. Whether the trial court erred in granting alimony *in futuro*, by presuming an impediment to rehabilitation, where the disadvantaged spouse offered no supporting documentation of claimed disability, was denied disability benefits, had worked throughout the majority of the marriage in a licensed trade, and had made no subsequent attempt at regaining employment after a period of inactivity.
>
> 2. Whether the trial court erred in granting alimony *in futuro* in the amount of $850.00 per month, where the disadvantaged spouse presented limited information of her needs and had received a substantial monetary benefit through property division.

The Tennessee Supreme Court has consistently recognized that trial courts in Tennessee have broad discretion to determine whether spousal support is needed and, if so, to determine the nature, amount, and duration of the award. *See*, *e.g.*, ***Gonsewski v. Gonsewski***, 350 S.W.3d 99, 105 (Tenn. 2011); ***Bratton v. Bratton***, 136 S.W.3d 595, 605 (Tenn. 2004); ***Burlew v. Burlew***, 40 S.W.3d 465, 470 (Tenn. 2001); ***Crabtree v. Crabtree***, 16 S.W.3d 356, 360 (Tenn. 2000). Because a trial court's "decision regarding spousal support is factually driven and involves the careful balancing of many factors," ***Gonsewski***, 350 S.W.3d at 105 (footnote omitted), the role of an appellate court is not to second guess the trial court or to substitute its judgment for that of the trial court, but to determine whether the trial court abused its discretion in awarding, or refusing to award, spousal support. ***Id***.; ***White v. Vanderbilt Univ.***, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999) ("If a discretionary decision is within a range of acceptable alternatives, we will not substitute our judgment for that of the trial court simply because we may have chosen a different alternative."). "An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of

the evidence, or relies on reasoning that causes an injustice." ***Id.*** (citing ***Wright ex rel. Wright v. Wright***, 337 S.W.3d 166, 176 (Tenn. 2011); ***Henderson v. SAIA, Inc***., 318 S.W.3d 328, 335 (Tenn. 2010)). In determining whether the trial court abused its discretion, an appellate court "should presume that the [trial court's] decision is correct and should review the evidence in the light most favorable to the decision." ***Gonsewski***, 350 S.W.3d at 105–06; *see also* Tenn. R. App. P. 13(d) ("[R]eview of findings of fact by the trial court in civil actions shall be *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the finding [s], unless the preponderance of the evidence is otherwise.").

Tennessee recognizes four distinct types of spousal support: (1) alimony *in futuro*, (2) alimony *in solido*, (3) rehabilitative alimony, and (4) transitional alimony. Tenn. Code Ann. § 36-5-121(d)(1) (2010 & Supp. 2012). Alimony *in futuro*, such as that awarded in the instant case, is a form of long-term support.  An award of alimony *in futuro* is appropriate when the economically disadvantaged spouse cannot achieve self-sufficiency and economic rehabilitation is not feasible. ***Gonsewski***, 350 S.W.3d at 107. Alimony *in solido*, another form of long-term support, is typically awarded to adjust the distribution of the marital estate and, as such, is generally not modifiable and does not terminate upon death or remarriage. ***Id.*** at 108. By contrast, rehabilitative alimony is short-term support that enables a disadvantaged spouse to obtain education or training necessary to become self-reliant following a divorce. ***Id***.  Where economic rehabilitation is unnecessary, transitional alimony may be awarded. Transitional alimony assists the disadvantaged spouse with the "transition to the status of a single person." ***Id***. at 109 (internal quotation marks omitted). Rehabilitative alimony "is designed to increase an economically disadvantaged spouse's capacity for self-sufficiency," whereas "transitional alimony is designed to aid a spouse who already possesses the capacity for self-sufficiency but needs financial assistance in adjusting to the economic consequences of establishing and maintaining a household without the benefit of the other spouse's income." ***Id***. Consequently, "transitional alimony has been described as a form of short-term 'bridge-the-gap' support designed to 'smooth the transition of a spouse from married to single life.'" ***Mayfield v. Mayfield***, 395 S.W.3d 108 (Tenn. 2012) (citing ***Engesser v. Engesser***, 42 So.3d 249, 251 (Fla. Dist. Ct. App. 2010)).  Transitional alimony is payable for a definite period of time and may be modified only if: (1) the parties agree that it may be modified; (2) the court provides for modification in the divorce decree, decree of legal separation, or order of protection; or (3) the recipient spouse resides with a third person following the divorce. Tenn. Code Ann. § 36-5-121(g)(2).

Tennessee statutes concerning spousal support reflect a legislative preference favoring rehabilitative or transitional alimony rather than alimony *in futuro* or *in solido*. *See* Tenn. Code Ann. § 36-5-121(d)(2)–(3); ***Gonsewski***, 350 S.W.3d at 109. Not even long-term support is a guarantee that the recipient spouse will be able to maintain the same standard of living enjoyed before the divorce because "two persons living separately incur more expenses than

two persons living together." ***Gonsewski***, 350 S.W.3d at 108 (quoting ***Kinard v. Kinard***, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998)), *see* full context *infra*. Although the parties' standard of living is a factor courts must consider when making alimony determinations, *see* Tenn. Code Ann. § 36-5-121(i)(9), the economic reality is that the parties' post-divorce assets and incomes often will not permit each spouse to maintain the same standard of living after the divorce that the couple enjoyed during the marriage. ***Gonsewski***, 350 S.W.3d at 113. Decisions regarding the type, length, and amount of alimony turn upon the unique facts of each case and careful consideration of many factors, including, but not limited to, the statutory factors contained in Tennessee Code Annotated Section 36-5-121(i). The pertinent factors include:

> (1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
> (2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;
> (3) The duration of the marriage;
> (4) The age and mental condition of each party;
> (5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
> (6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;
> (7) The separate assets of each party, both real and personal, tangible and intangible;
> (8) The provisions made with regard to the marital property as defined in § 36-4-121;
> (9) The standard of living of the parties established during the marriage;
> (10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;
> (11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121(i). The two most important factors, however, are the disadvantaged spouse's need and the obligor spouse's ability to pay. *Gonsewski*, 350 S.W.3d at 109–10.

Before turning to the record and the specific circumstances of this case, we begin with a review of the statutory and case law relied upon by Husband in seeking to reverse the trial court's award of alimony *in futuro*. These cases, *Crabtree v. Crabtree*, 16 S.W.3d 356 (Tenn. 2000), *Dempsey v. Dempsey*, No. M1998-00972-COA-R3-CV, 2000 WL 1006945 (Tenn. Ct. App. July 21, 2000), and *Gonsewski v. Gonsewski*, 350 S.W.3d 99 (Tenn. 2011) were recently outlined, and their holdings were specifically discussed by this Court in *Gorman v. Gorman*, No. M2010-02620-COA-R3-CV, 2011 WL 5599867 (Tenn. Ct. App. Sept. 21, 2011), wherein Judge Bennett, writing for the Court, explained:

> In 2000, our Supreme Court issued its opinion in *Crabtree v. Crabtree*, 16 S.W.3d 356 (Tenn. 2000), a case which has often been the starting point for subsequent cases concerning rehabilitative alimony. *Crabtree* involved the dissolution of a 23-year marriage. *Id*. at 357. The wife was a certified public accountant who began working part-time when the couple started a family; she was earning approximately $41,000 a year working out of the home at the time of the divorce. *Id*. The husband, a stockbroker, earned approximately $417,000 in the year preceding the divorce. *Id*. at n. 1. The trial court awarded Ms. Crabtree rehabilitative alimony of $1,700 per month for five years, followed by alimony *in futuro* of $1,200 per month. *Id.* at 357–58. The Court of Appeals affirmed the alimony award. *Id*. at 358.
>
> In analyzing the case, the Supreme Court focused on the statutory preference for rehabilitative alimony. *Id*. The Court concluded that, "[i]f an award of rehabilitative alimony is justified by the parties' circumstances, a trial court initially should award rehabilitative alimony only." *Id*. at 360. Should the recipient's prospects of economic rehabilitation change, the court reasoned, the rehabilitative alimony award could be modified; if rehabilitation were not feasible, the court could then

award alimony *in futuro*. *Id*. At the time of the initial alimony award, however, "a concurrent award of both types of alimony is inconsistent." *Id*. The Court also noted that the trial court had not made any findings of fact regarding the statutory factors, thereby requiring the Court to make an independent review of the record to determine the preponderance of the evidence. *Id*.

The Court concluded that the award of alimony *in futuro* "is not justified and does not recognize or further the legislative purpose of encouraging divorced spouses to become self-sufficient." *Id*. The Court agreed with the trial court's conclusion that Ms. Crabtree could be rehabilitated, noting her education and earning capacity, estimated by Mr. Crabtree to be between $65,000 and $100,000 annually. *Id*. After reviewing all of the statutory factors, the Court affirmed the award of rehabilitative alimony for five years but increased the amount to $2,500 per month to assist Ms. Crabtree in making the transition to full-time employment. *Id*. at 361. The award of alimony *in futuro* was reversed. *Id*.

*Gorman*, 2011 WL 5599867 at *2–*3 (footnote omitted). The *Gorman* Court went on to discuss the *Dempsey* case as follows:

This court examined the implications of *Crabtree* in *Dempsey v. Dempsey*, No. M1998-00972-COA-R3-CV, 2000 WL 1006945 (Tenn. Ct. App. July 21, 2000), a case involving an award of alimony *in futuro*. The question raised in *Dempsey* was "the proper measure of economic rehabilitation to be used in determining if the disadvantaged spouse's attainment of that level is feasible." *Id*. at *2. While the relevant statutory provisions were not as detailed a[s] they are now, they did state the general assembly's intent "that a spouse who is economically disadvantaged, relative to the other spouse, be rehabilitated whenever possible by the granting of an order for the payment of rehabilitative, temporary support and maintenance." *Id*. at *2, n.1 (quoting Tenn. Code Ann. § 36-5-101(d)(1) (2000) (now Tenn.Code Ann. § 36-5-121(d)(2))). Where rehabilitation was not possible, the statute allowed for long-term support. *Id*.; *see* Tenn.Code Ann. § 36-5-101(d)(1) (2000) (now Tenn. Code Ann. § 36-5-121(d)(3)). Based upon the statutes and caselaw,

this court concluded that "a court should determine whether it is feasible for a disadvantaged spouse to improve his or her earning capacity to a 'reasonable level.'" ***Dempsey***, 2000 WL 1006945, at *4. We then proceeded to consider whether this reasonable level should be related to the pre-divorce standard of living or the other spouse's earning capacity. ***Id***. After a lengthy discussion of ***Crabtree***, we reached the conclusion that the holding in ***Crabtree*** "indicates that this differential [between the earning capacities of the husband and wife] is not relevant to the question of the feasibility of rehabilitation, at least at the time of the initial determination of whether rehabilitation is feasible." ***Id***. at *6 (footnote omitted). Based upon the statutory preference for rehabilitation and the Supreme Court's analysis in ***Crabtree***, this court concluded that an award of rehabilitative alimony, rather than alimony *in futuro*, was appropriate. ***Id***. at *7.

***Gorman***, 2011 WL 5599867 at *3–*4 (footnote omitted).

Concerning the evolution of the statutory provisions governing alimony, the ***Gorman*** Court explained:

In 2003, the general assembly enacted revisions to the provisions of Tenn. Code Ann. § 36-5-101(d) governing alimony. *See* 2003 Tenn. Pub. Acts ch. 305. In 2005, the general assembly again revised the alimony provisions and moved them to Tenn. Code Ann. § 36-5-121. *See* 2005 Tenn. Pub. Acts ch. 287. The new provisions added transitional alimony to the recognized forms of alimony and specifically allow for concurrent awards of rehabilitative and in futuro alimony. *See* Tenn. Code Ann. § 36-5-121(d), (g); ***Anderson v. Anderson***, No. M2005-02029-COA-R3-CV, 2007 WL 957186, at *5 (Tenn. Ct. App. Mar. 29, 2007).[2] The provisions added in 2003 and 2005 define what it means to be rehabilitated and contain the following statements of public policy:

[2] As this court recognized in ***Anderson v. Anderson***, No. M2005-02029-COA-R3-CV, 2007 WL 957186, at *5 (Tenn. Ct. App. Mar. 29, 2007), the provisions of Tennessee Code Annotated Section 36-5-121(d)(4) supersede the holding of ***Crabtree*** with regard to concurrent awards of rehabilitative and *in futuro* alimony. The statute now recognizes that, in some cases, only partial rehabilitation is possible. *See* Tenn. Code Ann. § 36-5-121(d)(4); ***Anderson***, 2007 WL 957186, at *5–6.

• "Spouses have traditionally strengthened the family unit through private arrangements whereby one (1) spouse focuses on nurturing the personal side of the marriage, including the care and nurturing of the children, while the other spouse focuses primarily on building the economic strength of the family unit. This arrangement often results in economic detriment to the spouse who subordinates such spouse's own personal career for the benefit of the marriage. It is the public policy of this state to encourage and support marriage, and to encourage family arrangements that provide for the rearing of healthy and productive children who will become healthy and productive citizens of our state." Tenn. Code Ann. § 36-5-121(c)(1).

• "The general assembly finds that the contributions to the marriage as homemaker or parent are of equal dignity and importance as economic contributions to the marriage. Further, where one (1) spouse suffers economic detriment for the benefit of the marriage, the general assembly finds that the economically disadvantaged spouse's standard of living after the divorce should be reasonably comparable to the standard of living enjoyed during the marriage or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties." Tenn. Code Ann. § 36-5-121(c)(2).

*Gorman*, 2011 WL 5599867 at *4–*5.

Finally, the *Gorman* Court turned to explain the recent Tennessee Supreme Court decision in *Gonsewski*:

The most recent Supreme Court case relevant to our discussion is *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 2011 WL 4116654. The Supreme Court stated the issue presented as

-12-

"whether alimony *in futuro* should be awarded to a spouse who has a college degree, good health, a stable work history in a relatively high paying job, and a lack of demonstrated need for such long-term alimony." *Id*. at *1. The Gonsewskis were married for 21 years and had two children, who were adults at the time of the divorce. *Id*. Both spouses worked throughout the marriage-the wife as an information technologist with the State of Tennessee with a base salary of $72,000, and the husband as an accountant with a gross income of $137,418 and a bonus of $34,726 in 2008. *Id*. The husband testified that the bonuses he received in 2007 and 2008 were unusually large. *Id*. The trial court divided the marital property about equally and determined that the wife was not entitled to alimony, citing her stable job with the State, good income, and her share of the equity in the marital home (which the court considered sufficient to obtain another residence). *Id*. at *2. The Court of Appeals reversed the trial court's decision regarding alimony and ordered the husband to pay alimony *in futuro* of $1,250 per month, noting that alimony *in futuro* was "necessary to mitigate the harsh economic realities of divorce" in light of the disparity in the parties' incomes. *Id*.

The Supreme Court emphasized the "legislative preference favoring short-term spousal support over long-term spousal support, with the aim being to rehabilitate a spouse who is economically disadvantaged relative to the other spouse and achieve self-sufficiency where possible." *Id*. at *7 (citing Tenn. Code Ann. § 36-5-121(d)(2)–(3)). The Court further stated that "alimony *in futuro* should be awarded only when the court finds that economic rehabilitation is not feasible and long-term support is necessary." *Id*. Based upon on the statutory factors, the Court concluded that alimony *in futuro* should not have been awarded because alimony *in futuro* was intended to apply when the spouse could not be rehabilitated. *Id*. at *8. Tenn. Code Ann. § 35-5-121(f)(1), cited by the Court, provides, in pertinent part:

> Such alimony [*in futuro*] may be awarded when the court finds that there is relative economic disadvantage and that rehabilitation is not feasible, meaning that the disadvantaged spouse

-13-

is unable to achieve, with reasonable effort, an earning capacity that will permit the spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

In reversing the decision of the Court of Appeals and reinstating the trial court's decision, the Court specifically cited the wife's strong earnings record, the absence of evidence regarding what (if anything) she could do to alter her earning capacity to allow her post-divorce standard of living to be reasonably comparable to that applicable during the marriage, the little amount of evidence regarding the marital standard of living, and the lack of evidence regarding the husband's expected post-divorce standard of living. *Gonsewski*, 350 S.W.3d 99, 2011 WL 4116654, at *8. The Court interpreted the earnings evidence as showing the wife with a base salary of $72,000 a year and longevity bonuses and husband with a base salary of $99,900 with the likelihood of decreasing bonuses. *Id*. at *9. The Court also mentioned that the husband had taken out loans to help fund the children's college education. *Id*.

Noting that the award of alimony *in futuro* by the Court of Appeals in this case was inconsistent with its decision in *Crabtree*, the Court concluded its analysis as follows:

In short, Wife has the ability to support herself and, absent an abuse of discretion, we are not inclined to second-guess the trial court's decision not to award alimony *in futuro*. While we recognize that the record demonstrates a likelihood that Husband's income may continue to exceed Wife's by some extent, and that Wife's post-divorce lifestyle may decline to some extent, we are not willing to overrule the trial court on this basis. The economic realities are such that it

-14-

> is likely that Husband's standard of living will
> also decline as he establishes a separate household
> without Wife's income. We reiterate that "two
> persons living separately incur more expenses
> than two persons living together. Thus, in most
> divorce cases it is unlikely that both parties will
> be able to maintain their pre-divorce lifestyle once
> the proceedings are concluded."

> *Id*. at *10 (quoting *Kinard v. Kinard*, 986 S.W.2d 220, 234
> (Tenn. Ct. App. 1998)).

*Gorman*, 2011 WL 5599867 at *5–*6 (footnotes omitted). "Perhaps the two most significant points we are to derive from *Gonsewski* are the great deference appellate courts are to give to the trial court's decisions regarding alimony and the disfavor for long-term alimony." *Id*. at *6.  As in the *Gorman* Case, "[a]s applied to the case before us, the deference factor suggests upholding the . . . award of alimony in [*futuro*], while the disfavor for long-term alimony suggests striking down the award." *Id*.

However, in reviewing the statutory factors and the trial court's findings, we must bear in mind that our review is limited to the abuse of discretion standard. *Gonsewski*, 350 S.W.3d at 105. Alimony determinations are inherently factual in nature and require the trial court to balance many factors. *Id*. Our role is only "to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." *Id*.  In doing so, we review the specific circumstances of this case in light of the statutory factors outlined at Tennessee Code Annotated Section 36-5-121(I).

The first statutory factor is the "relative earning capacity, obligations, needs, and financial resources of each party." This inquiry should include "income from pension, profit sharing or retirement plans and all other sources." As found by the trial court, in this case, Husband is a skilled laborer, who has over eighteen years of experience in HVAC repair. He is a member of his union and earns over $30 per hour. Husband testified that, during the marriage, Wife took care of the house and children and also worked as a beautician. Wife testified that, at the time of the hearing, she had not worked as a beautician since 2007, and that her license had expired. She stated that she could no longer stand to perform her job because of "neuropathy, carpal tunnel, arthritis . . . and some back problems." She stated that, due to her health problems, she experiences "[n]umbness and tingling, and [her] fingers cross and get cramped" such that she cannot cut hair. At any rate, even when she was able-bodied, Wife testified that, at most, she earned between $300 and $400 per week "if she worked every day." Wife testified that, at present, she has no source of income and that she

relies upon her father and brother for housing. She testified that she lives, rent-free, in a boarding house, which is owned by her brother, and that her father occasionally gives her "10 bucks here and there," but that she "basically beg[s] for toilet paper and stuff from [the other boarders]." As noted by the trial court, Wife receives $200 per month in food stamps. From the record, it appears that Wife is economically disadvantaged in terms of her ability to earn. Even when she was able to work full time, she was not able to achieve the level of earnings that Husband does.

Concerning the relative needs of the parties, Husband argues that the trial court abused its discretion by imputing need/expenses to Wife when he contends that the record does not support this finding. Specifically, as set out above, the trial court stated, from the bench, that "the court took license to add a couple of things to the wife's needs because obviously she does need it, and it's clear to the court that she does." The trial court did not elaborate on what these additions entail. In addition, Husband contends that Wife's failure to submit a list of monthly expenses negates the trial court's finding that she has need of support.

Although we concede that the usual practice is for the parties to both submit a list of monthly expenses, which the trial court may weigh against their relative earnings, this is not the only method by which need may be established. As noted above, Wife testified that she lives in her brother's boarding house, that she gets a few dollars from her father, that she gets food stamps, and that she "begs" various household necessities from the other boarders. She further testified that, through her research, she discovered that an apartment would cost her approximately $600 per month in rent, not including utilities, which she estimated would be around $125 per month. In addition, she testified that she currently drives a "1996 Ford truck," but that it is unreliable and only "runs around town." In relevant part, Wife also testified concerning her medical insurance as follows:

> Q. Right now you're covered by insurance under his [Husband's] work, but after this divorce you won't be. What are you going to do?
>
> A. Be without insurance.
>
> Q. Is the COBRA payment for a year 160 a month through his work?
>
> A. Yes.
>
> Q. So that's 160, and that doesn't include the co-pay.

-16-

A. It's like 10 percent after the deductible of $500.

Wife also submitted an exhibit comprised of her past-due medical bills, totaling approximately $14,079.61.

Although the trial court did not make a specific credibility finding concerning either party's testimony, it is clear from the trial court's order that it did credit Wife's testimony in regard to her need. It is well settled that when the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge who has the opportunity to observe the witnesses and their manner and demeanor while testifying is in a far better position than this Court to decide those issues. *See **McCaleb v. Saturn Corp***., 910 S.W.2d 412, 415 (Tenn. 1995); ***Whitaker v. Whitaker***, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997). The weight, faith, and credit to be given to any witness' testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. ***Whitaker***, 957 S.W.2d at 837; *see also **Walton v. Young***, 950 S.W.2d 956, 959 (Tenn. 1997). Crediting Wife's testimony, the evidence shows that Wife has a need of at least $875.00 per month (including $600.00 per month for rent, $125.00 per month for utilities, and $160.00 per month for insurance). This need does not include Wife's food expenses, which are paid through the $200.00 she receives per month in food stamps. Thus, from the record, we cannot conclude that the trial court abused its discretion in finding that Wife had need of support.

The second statutory factor, "the relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level," weighs in favor of Wife. As noted above, although Husband has only an eighth grade education, he is a skilled laborer, who has received years of training in his field of HVAC repair. Although trained as a beautician, Wife's uncontradicted testimony establishes that she is no longer able to perform that job and that her license has lapsed. Wife has only a tenth grade education; accordingly, her ability to secure further education and training is very limited.

The third factor, "the duration of the marriage," also weighs in favor of long-term alimony. The parties were married for almost thirty years and raised two children. According to the testimony, during the marriage, Wife was primarily in charge of housekeeping and child care. As discussed by the ***Gorman*** Court, the 2003 and 2005 amendments to the statutory provisions on alimony clearly indicate that housekeeping and child care arrangements should be considered in the alimony determination as "[t]his arrangement often results in economic detriment to the spouse who subordinates such spouse's own personal career for the benefit of the marriage." ***Gorman***, 2011 WL 5599867 at *4–*5.

-17-

The next factor is "the age and mental condition of each party." Although the parties are both relatively young (Husband was 49 at the time of the hearing; Wife was 47), according to her uncontested testimony, Wife has suffered from diagnosed schizophrenia and anxiety disorder. She has been hospitalized at least twice specifically due to these mental conditions. Husband has no such impairments. Accordingly, this factor weighs in favor of Wife.

We have previously touched on the fifth statutory factor, "the physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease." Although both parties have Hepatitis C and arthritis, Husband testified that these conditions have not affected his ability to work. On the other hand, Wife testified that she cannot work due to her inability to stand for longer than one hour and the problem with neuropathy and cramping in her hands. There is some dispute in the record as to the extent of Wife's impairment. Husband points to the testimony concerning Wife's ability to paint and clean a house that she was renting. He opines that, if she was able to perform these tasks, she is able to hold a job. Wife testified that, although she can do some work, she has no stamina and is only able to "work one hour and sit 30 [minutes] and work another hour." However, she testified that because of neuropathy and cramping in her hands, she cannot do the job for which she trained, i.e., beautician. In addition, Wife testified that she has vision problems, including night blindness, which impede her ability to drive after dark. Considering the relative physical conditions of the parties, we conclude that Wife is more disadvantaged than Husband in terms of the types of jobs, if any, she would be able to perform.

Husband also points to the fact that Wife was denied Social Security disability benefits. Specifically, he argues that this fact is evidence that she is not disabled. We respectfully disagree. Neither party cites any Tennessee cases directly deciding this issue, nor has our research revealed any. However, Tennessee courts have consistently awarded alimony in situations where one spouse was not awarded disability benefits, either through the failure of the spouse to apply for benefits or because the spouse was denied the benefits. For example, the husband in *Ohme v. Ohme*, No. E2004-00211-COA-R3-CV, 2005 WL 195082 (Tenn. Ct. App. Jan. 28, 2005), made a similar argument against the award of alimony to his former wife, stating that, "if [w]ife is truly disabled, she should be required to apply for disability benefits rather than forcing [h]usband to provide her with alimony and health insurance." In *Ohme*, the wife put on "uncontroverted" proof that she was unable to procure employment due to numerous physical and psychological ailments. This Court affirmed the trial court's award of alimony to wife, noting that husband presented no proof to rebut the wife's evidence that she had numerous medical issues, that she had a need for alimony, and that the husband had the ability to pay. Indeed, as stated by our Supreme Court in *Aaron v. Aaron*, 909 S.W.2d 408 (Tenn. 1995), "'the real need of the spouse seeking the

-18-

support is the single most important factor.'" *Id*. at 410 (quoting ***Cranford v. Cranford***, 772 S.W.2d 48, 50 (Tenn. Ct. App. 1989)). Likewise, in this case, Wife's testimony that she is unable to work due to physical ailments is uncontroverted in the record on appeal, other than Husband's contention that she was denied disability benefits.

The mere denial of benefits, however, without evidence that the denial was based on the applicant's lack of impairment, has been held insufficient to foreclose an award of alimony *in futuro*. Specifically, in ***Walton v. Walton***, No. W2004-02474-COA-R3-CV, 2005 WL 1922565 (Tenn. Ct. App. Aug. 10, 2005), this Court affirmed the trial court's award of alimony *in futuro* to wife based on her inability to work, despite the fact that she had been denied disability benefits. *Id.* at *6–*7. The record in ***Walton*** showed that the denial of disability benefits to the wife was not due to a lack of support for her claim of a physical disability, but was due to the fact that the wife had not worked long enough to qualify for benefits. *Id.* at *2. In the case-at-bar, although Husband contends that Wife was denied disability benefits, he fails to elaborate as to the basis for the denial. As such, we are unable to discern from the record on appeal whether the denial was based on Wife's physical impairments, or lack thereof, or her working history. As noted above, the mere fact that she was denied these benefits, without a basis in the record as to why, is not sufficient to prove that she is not disabled for purposes of spousal support. Finally, even a spouse's refusal to seek disability benefits has not been held a bar to an award of alimony. In ***Keith v. Keith***, No. E2009-02201-COA-R3-CV, 2010 WL 1221425, at *2–*4 (Tenn. Ct. App. March 30, 2010), the Court of Appeals affirmed an alimony award on the basis of wife's physical impairments despite wife's testimony that she had "no real excuse for not seeking disability benefits." In this case, Wife apparently made a good faith request for Social Security disability benefits, but was denied. As previously stated, the basis for the denial is not contained in the appellate record. What is contained in the record is Wife's uncontested testimony that she suffers from various medical issues. Wife also provided the court an exhibit of her medical bills. Although provided to prove her debts, these medical bills also indicate ongoing medical issues for which she has received myriad treatments. The fact that she has not been awarded Social Security benefits does not, *ipso facto*, lead us to conclude that she is able bodied in light of the proof of her medical conditions. Based on the above law, we must conclude that Husband has failed to meet his burden to show that the trial court abused its discretion in awarding Wife alimony *in futuro* notwithstanding the denial of any disability benefits. We concede that the factual circumstances surrounding the grant or denial of Social Security disability benefits may be considered by a trial court in reaching its determination of whether a spouse is disabled; however, we cannot go so far as to say that the denial of these types of benefits is, *ipso facto*, proof that a spouse is not disabled for purposes of alimony.[3]

---

[3]We note, however, that "Social Security, public welfare, disability benefits, retirement benefits, and

(continued...)

The sixth, seventh, and eighth factors, "the extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage," "the separate assets of each party, both real and personal, tangible and intangible," and "the provisions made with regard to the marital property as defined in § 36-4-121" are not applicable in this case. The parties' children are grown. As noted by the trial court, concerning the division of marital property, because the parties were able to reach agreement through mediation, the record is devoid of significant proof in this area. However, we know from the record that, although Husband was awarded the marital home, he was also assigned the mortgage debt (approximately $119,000). The primary proof on marital property division is the fact that Wife was awarded half of Husband's vested retirement account, which award totaled approximately $109,0000. As noted by the trial court, this was not an alimony award, but was part of the division of marital property. Moreover, as the court advised Wife, this money will be subject to large fines and negative tax implications should she choose to withdraw the funds rather than reinvesting them. Consequently, the award of these funds will not substitute for monthly alimony to supplement Wife's living expenses. In addition, the record indicates that Wife has many past-due debts from previous medical treatments. Given her current health issues, which impact her ability to work, she has no means of paying these debts.

Concerning the standard of living of the parties established during the marriage, there is little evidence on this issue. However, based upon the limited information in the record, it is clear that the parties enjoyed a moderate standard of living. At the time of their separation, the parties were living in a house, but it was encumbered by a mortgage. The parties both testified that their respective vehicles had over one-hundred-thousand miles on them and were both in need of replacement. From the record, neither party can expect an increase in their standard of living after the divorce. As in *Gonsewski*, "[w]hile we recognize that the record demonstrates a likelihood that Husband's income may continue to exceed Wife's by some extent. . . . [w]e reiterate that 'two persons living separately incur more

---

[3](...continued)

retirement accounts are considered sources of income for the purposes of determining an award of permanent alimony." 27B C.J.S. Divorce § 612 (2013); *Gragg v. Gragg*, 12 S.W.3d 412, 418-19 (Tenn. 2000) (". . .disability benefits should be considered when determining alimony and child support obligations."). Furthermore, a benefit of alimony *in futuro* is that it can be modified in the event of a substantial and material change in circumstances. "An award of alimony *in futuro* shall remain in the court's control for the duration of such award, and may be increased, decreased, terminated, extended, or otherwise modified, upon a showing of substantial and material change in circumstances." Tenn. Code Ann. § 36-5-121(f)(2)(A). Accordingly, should Wife later qualify for Social Security disability payments, Husband is not precluded from seeking a modification of the alimony award.

expenses than two persons living together.' Thus, in most divorce cases it is unlikely that both parties will be able to maintain their pre-divorce lifestyle once the proceedings are concluded." *Gonsewski,* 350 S.W.3d at 112-13 (quoting *Kinard v. Kinard*, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998)). Although both parties will have to make adjustments in their respective standards of living, this is not to say that Wife's standard should fall to the level of abject poverty.

Concerning factor ten, "the extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party," this factor weighs in Wife's favor. As discussed above, she was the primary homemaker during the marriage; she also worked at least part time. Husband was able to work full time and has gained over eighteen years of practical experience and on-the-job training.

The trial court did not weigh the eleventh factor, the relative fault of the parties because the parties agreed to the divorce. However, the court did note the last factor, "the tax consequences to each party, as are necessary to consider the equities between the parties." The court correctly noted that the payment of alimony will be charged to Wife as income on her federal tax returns. The court further noted that the award of half of Husband's retirement account could not be easily accessed for Wife's living expenses because of the tax consequences of early withdrawal.

In sum, considering the evidence in a light most favorable to the trial court's decision, as the *Gonsewski* case requires, we conclude that the trial court did not abuse its discretion in awarding Wife $850 per month in alimony *in futuro*. In reaching its decision, the trial court considered the relevant factors and, from the totality of the circumstances, the trial court's determination of the type and amount of spousal support was not "clearly unreasonable." *Gonsewski*, 350 S.W.3d at 105. We agree.

Wife has asked this Court to award her attorney's fees expended in defense of this appeal. Tennessee Code Annotated Section 27-1-122 provides:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

-21-

However, "[i]mposing a penalty for a frivolous appeal is a remedy which is to be used only in obvious cases of frivolity and should not be asserted lightly or granted unless clearly applicable, which is rare ." *Henderson v. SAIA, Inc*., 318 S.W.3d 328, 342 (Tenn. 2010). Although we have not decided the issues before us in Husband's favor, we are not persuaded that this appeal is frivolous or taken solely for delay. We, therefore, decline to award attorney's fees to Wife.

For the foregoing reasons, we affirm the trial court's award of alimony *in futuro*. The case is remanded for such further proceedings as may be necessary and are consistent with this Opinion. Costs of the appeal are assessed against the Appellant, Mark Burell Parrish, and his surety.

_____
J. STEVEN STAFFORD, JUDGE